Eva C. Cropsey, petitioner-respondent,

*v.*

Charles D. Cropsey, defendant-appellant.

[Argued October term, 1928.  Decided February 4th, 1929.]

*Messrs. McDermott, Enright & Carpenter,* for the appellant.

*Messrs. Perkins & Drewen,* for the respondent.

The opinion of the court was delivered by

Kalisch, J.

The appellant filed a verified petition in the court of chancery, setting forth, *inter alia,* that on the 29th day of June, 1920, his then wife, in a suit brought against him on the ground of his, the appellant's desertion of her, obtained a

decree *nisi;* that among other things it was decreed by the court that the appellant pay to her the sum of $20 per week for her maintenance and support, at the termination of each and every week from the date of the decree, and until further order of the court, and that he give bond to secure the payment thereof, in the penal sum of $1,000; that on the 10th day of January, 1921, a final decree was entered in the cause, but nothing was said in the final decree concerning the subject of alimony; that the appellant paid the $20 a week as provided in the decree *nisi,* and on March 15th, 1924, he entered into an agreement in writing with the respondent to increase the alimony from $20 per week, as provided in the decree *nisi,* to $25 a week, and that he continued to make such payments until the month of October, 1927, when he learned that the respondent was married to one Axel Swanson. The petition further charges, that at the time of the making of the agreement by the appellant, with the respondent, to pay her the increased alimony, the latter was engaged to be married to the said Axel, and was shortly to be married to him and fraudulently concealed her engagement and her intention to marry, knowing the appellant would not have agreed to her increase in alimony, had he known of or suspected her intention to remarry; that appellant continued to pay such increased alimony; that the respondent had no actual need of the payment of alimony shortly after her marriage to Axel and that the latter is amply able to support the respondent, and that respondent was independently wealthy in her own name and right. The appellant therefore petitioned the court to be relieved from making any further payments of alimony to respondent, either under the provision of the decree *nisi,* or under the agreement entered into between them on March 15th, 1924, and that the respondent be directed to refund to the appellant, all payments of alimony received by her from him, after the date of her remarriage on October 25th, 1924, with interest, on the several payments of alimony, and costs of the proceedings.

An order to show cause was directed to the respondent why the provision for the payment of alimony, in the decree *nisi,* and why the agreement for the increase of alimony made be-

tween the parties, and dated March 15th, 1924, should not be canceled and declared to be null and void, and why said appellant should not be relieved from the payment of any further sums of alimony for the maintenance and support of respondent, and that the respondent further show cause why she should not be ordered, adjudged and decreed to have received all payments of alimony fraudulently, from and after the date of her marriage to Axel Swanson on October 25th, 1924, and why she should not be decreed to have fraudulently concealed her said remarriage from the appellant, and why she should not be ordered, adjudged and decreed to repay the said appellant all sums received from him, for alimony and support, from and after October 25th, 1924, with costs.

The allegations of fraudulent conduct, on part of the respondent, and that the agreement in question, entered into between the appellant and respondent was obtained by her through deceit, and the concealment of her prospective marriage to Swanson, and that the appellant had sufficient means of her own for proper support contained in the appellant's petition, were controverted by affidavits presented on behalf of the respondent.

The matter came on for hearing on affidavits and exhibits before Vice-Chancellor Fielder, who advised that the order to show cause be dismissed, with costs, and that the appellant pay to respondent, or her solicitors, $150 counsel fee. The statement in appellant's brief that the petition was dismissed, seems to be erroneous.

The vice-chancellor filed no opinion in the case.

The first ground of appeal presented in the petition of appellant's appeal, is, that the court of chancery erred in dismissing his petition, which prayed that the alimony in favor of the respondent should be discontinued. (2) Because the court of chancery erred in not terminating all payments of alimony for the support and maintenance of the respondent, since she had remarried subsequent to the final decree of divorce in her favor, and that Axel Swanson, her second husband, was and is able to care for her support and maintenance. (3) That the court of chancery should have taken jurisdiction of said petition, and should not have dismissed the same,

without at least a hearing thereon. (4) Because the court of chancery erred in awarding a counsel fee on the dismissal of appellant's petition to the solicitors of the respondent.

These grounds of appeal are argued under three heads in the brief of appellant's counsel, and they will be taken up and considered in the order as presented.

Under the first head, it is argued by appellant's counsel, that because the respondent remarried with one Swanson, with whom she is living, and who is capable of properly supporting her, the obligation of the respondent to continue to pay alimony ceased.

No authority is cited in support of this contention. The decisions of the courts of this state are in accord, that the obligation of a divorced husband, to continue to pay alimony to his divorced wife, does not *ipso facto,* cease upon her remarriage. *Rigney* v. *Rigney, 62 N. J. Eq. 8* (at *p. 13*); *Warren* v. *Warren, 92 N. J. Eq. 334* (at *p. 338*); and the cases there collated.

Under the second head in the brief of counsel of appellant, it is argued, that even should it be considered that the remarriage of the petitioner could not, of itself, terminate the obligation to pay alimony, nevertheless, it puts the burden upon the divorced wife to show why the alimony should not be terminated.

In support of this assertion, appellant's counsel cites *Dietrick* v. *Dietrick, 99 N. J. Eq. 711,* in which case (at *p. 715*), Vice-Chancellor Bentley lays down the proposition "that the fair and just rule to be deduced is that the remarriage of the wife, who has divorced her husband, ought to raise a presumption that the necessity for alimony no longer exists, but it is subject to be rebutted, upon a showing that her husband will be unable to support her in anything like the station in life of the man whom she has divorced, in which event, the alimony should either be continued without change, or modified according to the circumstances of each individual case."

We do not approve the above stated proposition, that a remarriage, by a divorced wife, raises a presumption that the necessity of alimony no longer exists.

The proposition is rather a startling one. It embraces a presumption of fact founded on the circumstance of remarriage merely. We cannot perceive what fact or circumstance is engendered by a remarriage that permits a reasonable inference to be drawn from it, that the divorced wife has financially bettered her condition, so far as concerns the ability of her second husband to support and maintain her, in "the station in life of the man whom she has divorced."

For it is just as conceivable that the remarriage of a divorced wife might result in obtaining a husband without means, or one, though fully able to support and maintain her in her former station in life, but whose habits are, and conduct is such, as to deprive her of proper support and maintenance, as it is likely for a remarriage to result in a divorced wife obtaining a husband not only able to support and maintain her, according to her former station in life, but actually does so.

In the situation, logically considered, the burden of establishing that the remarriage of a divorced wife has placed her in a position in life so that she is in no further need of alimony from her divorced husband, rests upon him. In the instant case, the former husband, in his petition to relieve himself from the further allegation to pay alimony to his divorced wife, affirmatively states, that by the remarriage, the petitioner is in no further need of the alimony awarded her, in order to sustain her in her former station in life.

The fact of remarriage raises no presumption as to the faculties possessed by either the husband or wife. It remains, always, a subject of proof. The question, whether or not the respondent, by her second marriage, placed herself beyond all need of future alimony, became a question of fact required to be established by competent testimony. It is to be noted, that the petition of the appellant to be relieved from the further payment of alimony is not based upon any change of circumstances in his financial condition since the making of the original award, and the written contract, relating to the same, but is solely founded upon the assertion that the respondent is not in need of further payment of alimony to her.

The burden was upon the appellant to establish that the

respondent was not in need of further payment of alimony. The learned vice-chancellor, by discharging the rule to show cause, considered the proof contained in the affidavits insufficient to establish that the appellant was entitled to any relief from a further payment of alimony. We have reached the same conclusion.

Under the third head of the appellant's brief, it is argued that there was "evidence that the petitioner intentionally concealed her remarriage from the defendant" and, therefore, "there should at least have been a hearing to determine whether there was a fraudulent concealment of facts."

The charges of intentional concealment of remarriage were denied by the respondent, in the affidavits submitted by her, and it also appears there was an answering affidavit presented by the appellant.

The statement in the brief of counsel of appellant that "there should at least have been a hearing to determine whether there was a fraudulent concealment" of the remarriage has no place in the consideration of this appeal. So far as the state of the case discloses, the subject-matter of dispute was submitted to the court on affidavits, and it nowhere appears that any request was made to the court for an oral hearing.

The appeal from the award of counsel fee to the solicitors of respondent is not argued in appellant's brief, and, therefore, is presumed to be abandoned.

The court, on appeal, deals only with the questions presented and argued in the appellant's brief.

An examination and consideration of the affidavits and exhibits, before the vice-chancellor, lead us to the conclusion that the rule to show cause was properly discharged.

The order discharging the rule to show cause is affirmed, with costs.

*For affirmance*—The Chief-Justice, Trenchard, Parker, Kalisch, Katzenbach, Campbell, Lloyd, Van Buskirk, Kays, Hetfield, Dear, JJ. 11.

*For reversal*—None.